UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ARAMIS JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-1129 |
| | ) | |
| CITY OF PEORIA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

This matter is now before the Court on Plaintiff's Petition for Attorney's Fees and Costs under 42 U.S.C. § 1988. (ECF No. 37). For the reasons stated below, Plaintiff's Petition is GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff had an initial consultation with attorney Athena M. Herman on September 15, 2016, regarding a case he believed he had against Defendant for unlawful termination.[1] Plaintiff paid $300.00 for the consultation but did not hire Ms. Herman because he could not afford her rates.

On March 27, 2017, after being issued a dismissal and notice of right to sue by the U.S. Equal Employment Opportunity Commission, Plaintiff filed a pro se complaint alleging unlawful termination of employment in violation of Title VII of the Civil Rights Act of 1964, 41 U.S.C § 1981. (ECF No. 1). Plaintiff also filed a motion to proceed *in forma pauperis* and a motion requesting appointment of counsel. (ECF No. 2 – 4). This Court granted Plaintiff's motion to proceed *in forma pauperis,* but denied appointment of counsel. (ECF No. 5).

---

[1] Most of the alleged facts in the Background section are derived from Plaintiff's Petition for Attorney's Fees and Costs. (ECF No. 37).

Subsequently, Plaintiff met with Ms. Herman and requested that she represent him, but she declined because Plaintiff was still unable to afford her rates; however, Ms. Herman did advise Plaintiff that he should file a motion for default judgment because Defendant had not filed a timely response to his complaint.

After being provided notice of default, Defendant filed a motion to dismiss Plaintiff's complaint on September 19, 2017. (ECF No. 14). Thereafter, Plaintiff contacted Ms. Herman and requested that she review Defendant's motion to dismiss, to which she agreed. Ms. Herman provided legal advice and told Plaintiff that Defendant wrongly requested his complaint be dismissed with prejudice when Federal Rule of Civil Procedure 4(m) requires that such dismissal be without prejudice. During this meeting, Ms. Herman continued to decline to represent Plaintiff, but allegedly stated that he would be charged for the advice if he won his case. At this meeting, Ms. Herman also told Plaintiff that he could contact her in the future for limited legal advice and she might be willing to provide it on an "*ad hoc* basis."

On June 29, 2018, Plaintiff reached out to Ms. Herman seeking advice regarding discovery. Ms. Herman provided Plaintiff with sample interrogatories and requests to produce documents and made recommendations about how Plaintiff could adapt them to fit his case. On July 24, 2018, Plaintiff sent Ms. Herman his draft discovery requests, and Ms. Herman revised them. When Defendant failed to respond to Plaintiff's discovery requests, Ms. Herman provided him with a sample motion to compel and told him how to adapt it to his case.

Plaintiff met Ms. Herman on October 25, 2018, to review Defendant's responses to Plaintiff's discovery requests. They met again on November 27, 2018, to discuss what information was missing from Defendant's responses. Ms. Herman provided Plaintiff guidance regarding a

second motion to compel. Plaintiff returned the next day with a draft of the motion, and Ms. Herman edited it.

Sometime thereafter, Plaintiff made a "good-faith payment" of $75.00 to Ms. Herman and bought a fruit tray for the time she had provided. Ms. Herman also spoke with Plaintiff concerning the arguments he should make at a motion hearing in December 18, 2018.

Ms. Herman did not hear from Plaintiff again until March 2019, when he received a deposition notice. Ms. Herman continued to decline representation but agreed to prepare him for the deposition and to represent him solely at the deposition. She told him that she would consider future representation based on what would occur at the deposition.

During Plaintiff's deposition on March 14, 2019, Ms. Herman made the decision to represent him and entered an appearance in the case. (ECF No. 33). The same day, Defendant served Plaintiff with a Rule 68 Offer of Judgment ("Offer"). The Offer stated:

> [Defendant] offers to allow judgment to be taken against it in the amount of $5,001 (FIVE Thousand and One Dollars), exclusive of costs and attorneys' fees which may be taxed as costs by the Court pursuant to 42 U.S.C. § 1988. The Defendant will pay this amount to the Plaintiff and will pay in addition such attorneys' fees and costs as the Court may award in full satisfaction of the judgment. The Plaintiff shall be entitled to no other relief.

(ECF No. 34). Plaintiff accepted the Offer.

Thereafter, Ms. Herman provided Defendant with a letter requesting fees and costs in the amount of $12,676.00, reflective of 27.8 billable hours at a rate of $425/hour, the $300.00 consultation fee Plaintiff paid, and $561.00 in costs. (ECF No. 37-4). On May 20, 2019, Defendant countered with $6861.00, reflective of $6000.00 for attorney's fees, $300.00 consultation fee, and $561.00 for the costs Ms. Herman identified. (ECF No. 37-5). Defendant reached their calculation by lowering Ms. Herman's rate to $300/hour, which was the rate the Central District set in *Norton v. City of Springfield*, 2018 WL 6601083 (C.D. Ill. Dec. 17, 2018). *Id.*

The Parties attempted to resolve the issue of attorney's fees without the Court's involvement. Because those efforts were unsuccessful, Plaintiff's attorney now seeks an award of attorney's fees of $18,487.50 and costs of $535.00 under 42 U.S.C. § 1988. This Opinion follows.

## STANDARD OF REVIEW

Section 1988 provides district courts with discretion to award reasonable attorney's fees to the prevailing party in section 1981 actions. 42 U.S.C. § 1988(b). A plaintiff who accepts an Offer of Judgment is the prevailing party for purposes of an award of attorney's fees. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999). Moreover, a plaintiff is determined to be a prevailing party if he succeeds on any significant issue which achieves some of the benefit he sought in pursuing litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). While a party who receives even nominal damages is a prevailing party under § 1988, "a reasonable attorney's fee for a nominal victor is usually zero." *Aponte v. City of Chicago*, 728 F.3d 724, 726–27 (7th Cir. 2013) (citing *Farrar v. Hobby*, 506 U.S. 103, 115 (1992)). If more than nominal damages have been awarded, courts follow the alternative path set forth in *Hensley*, which starts by determining the lodestar amount, i.e., "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. The court may then adjust the lodestar amount upward or downward depending on a variety of factors, such as the degree of success, the novelty and difficulty of the issues, and awards in similar cases. *Id.* at 434.

## ANALYSIS

I.  **Reasonableness of the Number of Hours Expended**

What qualifies as a "reasonable" use of a lawyer's time "is a highly contextual and fact-specific enterprise." *Sottoriva* v. *Claps*, 617 F.3d 971, 975 (7th Cir. 2010). As such, the court has "wide latitude" in awarding attorney's fees. *Id.* The court considers whether hours are "excessive,

redundant, or otherwise unnecessary" and may reduce the lodestar calculation, for example, for hours spent on unrelated and unsuccessful claims, hours that attorneys would not bill their clients, and hours for which the prevailing party has failed to adequately support. *Hensley*, 461 U.S. at 433–34. Because of its familiarity with the litigation, the district court is in the best position to determine the number of hours reasonably expended in the litigation. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 519 (7th Cir. 1993).

In the case at bar, the Court has allocated Ms. Herman's requested fees into three separate time periods: (1) work performed prior to Plaintiff's deposition; (2) work commencing at Plaintiff's deposition up to the Offer and subsequent work; and (3) work related to litigating attorney's fees.

*A. Work Performed Prior to Plaintiff's Deposition*

From September 2017 to March 2019, Ms. Herman continuously declined to represent Plaintiff; however, she did provide Plaintiff with limited legal advice during that timeframe. This limited work included recommending that Plaintiff file a motion for default judgment, reviewing Defendant's motion to dismiss, providing Plaintiff with sample discovery requests and reviewing his drafts, providing Plaintiff with a sample motion to compel, reviewing Defendant's responses to Plaintiff's discovery requests, and providing guidance for Plaintiff to file a second motion to compel and editing it. As such, Ms. Herman argues that she should recover fees for 5.5 hours of time expended during that period.

Defendant argues that the 5.5 hours that Ms. Herman seeks for work done prior to representing Plaintiff should not be considered because Ms. Herman never advised the Court, or opposing counsel, that she was representing Plaintiff.

Illinois Supreme Court Rule 137(e) addresses the situation in which an attorney assists a

5

pro se litigant but does not enter an appearance. *See* Ill. Sup. Ct. Rule 137(e). Under that Rule,

> an attorney may assist a self-represented person in drafting or reviewing a pleading, motion, or other document paper without making a general or limited scope appearance. Such assistance does not constitute either a general or limited scope appearance by the attorney. The self-represented person shall sign the pleading, motion, or other paper.

*Id.* Additionally, an attorney is permitted to enter into a limited scope engagement, which may include providing advice to a party regarding the drafting of a pleading, motion, or other paper, or reviewing a pleading, motion, or other paper drafted by a party, without filing a general or limited scope appearance. Ill. Rule of Prof. Conduct 1.2(c). In such a circumstance, an attorney is not required to sign or otherwise note the attorney's involvement and the certification requirements in Rule 137 are inapplicable. *Id.* Moreover, even if an attorney is identified in connection with such a limited scope representation, the attorney will not be deemed to have made a general or limited scope appearance. *Id.*

Given the alleged facts in this case, it appears Plaintiff and Ms. Herman had a limited scope engagement prior to Plaintiff's deposition. Despite repeatedly declining to represent Plaintiff, Ms. Herman would assist and provide advice to Plaintiff, a pro se litigant, but did not sign any pleadings or enter an appearance. This type of assistance is allowed.

Presumably because Ms. Herman refused to represent Plaintiff, no retainer agreement was signed during this timeframe. However, the circumstances that develop are a bit unusual. Plaintiff states in his affidavit that Ms. Herman relayed that he would owe her at some point in the future if Defendant ever paid him. (ECF No. 37-2 at ¶ 3). According to the Illinois Rules of Professional Conduct, "[t]he scope of representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing…" Ill. Rule of Prof. Conduct 1.5(b). Moreover, contingent fee agreements are required to be in writing and there

are no exceptions. *Id.* at 1.5(c); *In re Spak*, 719 N.E.2d 747, 754 (Ill. 1999). Here, the scope of representation and Ms. Herman's fee were never expressed in writing. What troubles the Court is Ms. Herman herself appears to have drafted Plaintiff's affidavit as she billed for it in her time sheet. The entry appears on August 15, 2019, as "draft plaintiff's affidavit." (ECF No. 41 at 3). Moreover, the statement in Plaintiff's affidavit, about being paid at some point in the future, is extremely vague. The Court is unable to decipher if the statement inferred Ms. Herman would be paid a portion of what was recovered, such as a contingency agreement, or if she would be paid her hourly rate. Even though Plaintiff signed the affidavit that Ms. Herman drafted for him, it is unclear what, if anything, Plaintiff understood would be monetarily required of him if he prevailed on his claim.

Notwithstanding these circumstances, Plaintiff's affidavit does provide an interesting detail. Sometime after November 27, 2018, Ms. Herman asked Plaintiff to make a "good-faith payment" for the assistance she provided, and in turn, he paid her $75.00 and bought her a fruit tray. (ECF No. 37-2 at ¶ 5). The Court does not know the exact date when this payment occurred, but Plaintiff does indicate that he did not reach out to Ms. Herman again until he received a deposition notice in March 2019. *Id.* at ¶ 6. Therefore, the Court interprets this "good-faith" payment to represent work performed before the deposition notice.

While the Court was not presented with a written contract, an exchange occurred. A legally enforceable contract is an exchange. *Patel v. American Bd. of Psychiatry & Neurology, Inc.*, 975 F.2d 1312, 1314 (7th Cir. 1992). The elements of a contract are, of course, offer, acceptance, and consideration. *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996). Between September 21, 2017, to December 18, 2018, Ms. Herman assisted Plaintiff with his lawsuit on some occasions. While she did not represent him, she did provide legal services consisting of 5.5 hours, according

7

to Ms. Herman's time sheet. In return for this valuable service, Plaintiff paid Ms. Herman $75.00 and bought her a fruit tray, and she accepted this payment. The Court finds the elements of a contract occurred in this exchange. Since Ms. Herman was already paid for the legal assistance she provided prior to Plaintiff's deposition, the Court denies her request for additional fees for the 5.5 hours she performed during this timeframe.

### B. Plaintiff's Deposition up to the Offer and Subsequent Work

According to the time sheets, Ms. Herman is seeking fees for 20 hours of work performed between March 12, 2019, to March 27, 2019, and 0.9 hours between June 18, 2019, to August 1, 2019. (ECF No. 41). This timeframe encompasses work performed in preparation for Plaintiff's deposition, her appearance at the deposition, work related to the Offer, and work after the Offer was accepted. Defendant does not object to this request and concedes that Ms. Herman is "entitled to some fees for preparing for the deposition and responding to the Rule 68 offer and other preparatory duties." (ECF No. 38 at ¶ 24). Defendant's main argument involves fees for services prior to the deposition, which the Court has addressed above.

In considering the reasonableness of an attorney's fees award, the court should be mindful that a request for attorney's fees should not result in a second major litigation. *Sottoriva*, 617 F.3d at 975. "In light of this concern, as well as the fact that determining what qualifies as a 'reasonable' use of a lawyer's time is a highly contextual and fact-specific enterprise," the Seventh Circuit has granted wide latitude to district courts in setting awards of attorney's fees. *Id*. The Supreme Court has explained that a reasonable attorney's fee under § 1988 "contemplates reasonable compensation, in light of all the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989).

The Court finds that Ms. Herman reasonably expended 20.9 hours on Plaintiff's claim

during this timeframe. Ms. Herman's time entries between March 20, 2019, to March 27, 2019, as well as June 18, 2019, to August 1, 2019, are clear and reflect that the hours expended were reasonable and necessary to the conduct of the litigation. Therefore, the Court finds that 20.9 hours were directly and reasonably incurred.

### C. Work Related to Litigating Attorney's Fees

Ms. Herman's request also includes fees for time after the Offer was accepted and the Parties were disputing the attorney's fees. Defendant has not raised any objection to these fees.

Rule 68 provides an answer about what happens to fees incurred after an offer is rejected, but Rule 68 is less clear about what happens when it is accepted. *See* FED. R. CIV. P. 68. Rule 68(a) states in part, "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, *with the costs then accrued.*" *Id.* (emphasis added). Rule 68(d) states that when an offer is rejected, "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay *the costs incurred after the offer was made.*" *Id.* (emphasis added). In *Marek v. Chesny*, the Supreme Court determined the term "costs" in the rule refers to all costs awardable under the relevant statute, which includes attorney's fees for a successful plaintiff. *Marek v. Chesny*, 473 U.S. 1, 5 (1985). The Court said that Rule 68 "shifts to the plaintiff all 'costs' incurred subsequent to an offer of judgment not exceeded by the ultimate recovery at trial." *Id.* at 4.

Neither the Rule itself nor the Advisory Committee Notes elaborate on the meaning of the phrase "costs then accrued" when an offer of judgment is accepted. Courts have reached differing conclusions in situations where the plaintiff accepts the offer, with some courts denying and some allowing fee recovery for the time period after the offer. The Seventh Circuit has observed that an offer of judgment can be analogized to contract law, *Nordby v. Anchor Hocking Packaging Co.*,

199 F.3d 390, 392–93 (7th Cir. 1999), but such an offer is different from a contract offer because of the consequences set out in Rule 68. *Sanchez v. Prudential Piazza, Inc.*, 709 F.3d 689, 692 (7th Cir. 2013). "[B]ecause the consequences of a Rule 68 offer are so great, the offering defendant bears the burden of any silence or ambiguity concerning attorney fees." *Id.*

Thus, the outcome typically turns on the language of the offer itself. When the language unambiguously limits the recovery of fees and costs through the date of the offer, courts have denied fee recovery after the date the offer was made. *See World Outreach Conference Ctr. v. City of Chicago,* 234 F. Supp. 3d 904, 917–18 (N.D. Ill. 2017) (citing *Morjal v. City of Chicago,* 774 F.3d 419, 422–23 (7th Cir. 2014)). In cases where the language in the offer was silent as to fees and costs, the Seventh Circuit has held that the offering defendants "should bear the burden of the ambiguity created by their silence …" *Webb v. James*, 147 F.3d 617, 623 (7th Cir. 1998).

Here, the Offer states, "Defendant… will pay in addition such attorney's fees and costs as the Court may award in full satisfaction of the judgment." (ECF No. 34). Applying the principle that any ambiguity is construed against the defendant who made the offer, Defendant's use of the phrase "will pay … attorney's fees and costs as the Court may award…" did not unambiguously cut off any fees accrued after the Offer, including fees in pursuit of attorney's fees. Additionally, there is nothing in the record to show that Defendant's counsel protested that the Offer cut off fees on the date the Offer was made or accepted. Thus, Ms. Herman may recover reasonable attorney's fees for time spent related to her fees request.

While the time Ms. Herman expended in preparation of a fee petition is compensable, the Seventh Circuit has observed that lawyers often "litigate fee issues with greater energy and enthusiasm than they litigate any other type of issue." *Ustrak v. Fairman*, 851 F.2d 983, 987–88 (7th Cir. 1988). Accordingly, one factor considered in determining the reasonableness of time

spent preparing a fee petition is "the comparison between the hours spent on the merits and the hours spent on the fee petitions." *Spegon*, 175 F.3d at 554. Where the time expended preparing a fee petition is disproportionate to the time spent on the merits of the case, courts reduce the amount of time recoverable for the preparation of the fee petition. *Id.* For example, in *Ustrak*, the prevailing party's attorney spent fifteen minutes preparing the fee petition for every hour spent litigating the merits. *Ustrak,* 851 F.2d at 988. The Seventh Circuit referred to this as "the tail wagging the dog, with a vengeance[,]" and reduced the requested time by two-thirds. *Id.*; *see also Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 411 (7th Cir. 1999) (affirming district court's reduction of attorney's time spent preparing the attorneys' fee motion from 9.9 hours to 1.6 hours where the attorney spent just under 100 hours litigating the merits of the case).

Here, the Court's review of Ms. Herman's time sheets reveal that she is seeking a total of 17.1 hours litigating the fee matter. (ECF No. 41). This includes 4.1 hours from April 3, 2019, to May 24, 2019, and 13 hours from July 24, 2019, to August 15, 2019. In fact, Ms. Herman has spent even more hours pursuing her fee petition (over 27 hours), but is only requesting partial compensation. The time sheets also reveal that Ms. Herman spent 20.9 hours litigating the merits of the case from March 12, 2019, to March 27, 2019, and June 18, 2019, to August 1, 2019. It appears that Ms. Herman has spent approximately the same number of hours litigating fees (17.1 hours) as she did in pursuing the merits of the case (20.9 hours). Accordingly, the Court concludes that this amount is excessive. *Spegon*, 175 F.3d at 554 ("[W]e must agree with the district court that it is patently unreasonable for [an attorney] whose hours constituted the bulk of [plaintiff's] requested attorneys' fee to expend the same number of hours, or almost as many, on [plaintiff's] fee petition as he expended on the merits of [plaintiff's] case.)

"In determining the reasonable number of hours, [a] court should exclude hours that are

'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 708 (7th Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). Courts have dealt with excessiveness in fee petition litigation in a variety of ways. In one matter, the court reduced the hours expended by 20%, *Gibson,* 873 F. Supp. 2d at 986, in another, the Seventh Circuit disallowed two-thirds of the hours expended. *Ustrak*, 851 F.2d at 988. In *Spegon,* where the attorney spent a similar amount of time preparing the fee petition as he did litigating the merits of the case, the Court reduced the requested 9 hours to 1.6 hours. *Spegon*, 175 F.3d at 554 (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988)). This is practically a 20% reduction.

Given the Court's discretion in calculating attorney's fees, and following the Seventh Circuit's previous rulings, the Court finds a 20% reduction in Ms. Herman's time spent litigating attorney's fees appropriate. Accordingly, the Court reduces Ms. Herman's 17.1 hours to 13.7 hours.

## II.     Reasonableness of the Hourly Rate

Ms. Herman is requesting to be awarded $425/hour because that is her typical billing rate, her skill and experience warrant that rate, and affidavits provided from comparable and local practitioners provide evidence that the rate she seeks is reasonable for someone of her reputation, skill, and experience. While Defendant noted in its letter dated May 20, 2019, that $300/hour would be a more reasonable fee, because that is the rate the Court set in a different case, Defendant makes no argument concerning Ms. Herman's rate in its response to her Petition.

Ms. Herman bears the initial burden of demonstrating that the requested hourly rates are "in line with those prevailing in the community." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). The Seventh Circuit has held that the "reasonable hourly rate used in calculating the lodestar must be based on the

12

market rate for the attorney's work." *McNabola.* 10 F.3d at 519. The market rate has been defined as "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Id.* If this burden is met, the defendant then has the burden to "offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)).

Here, Ms. Herman has met her burden of showing that her proposed rates are reasonable. In her Petition, Ms. Herman provided several affidavits of other local attorneys with similar years of experience who practiced employment law. (ECF No. 37-13 – 37-17). The unaffiliated attorneys attested that their rates were similar (and sometimes higher) and therefore Ms. Herman's requested rate of $425/hour was reasonable to them. *Id.* Defendant did not contest the affidavits of the attorneys unaffiliated with Ms. Herman's office. Ms. Herman also provided an affidavit of her client of ten years who has been paying $425/hour since September 2016. (ECF No. 37-11). Lastly, Ms. Herman provided many fee agreements that reflected the $425/hour rate. (ECF No. 37-12).

Defendant has offered no evidence in its response to suggest that a lower rate is necessary. Even if the Court considered the argument put forth in Defendant's letter from May 20, 2019, regarding the $300/hour rate, the Seventh Circuit has consistently cautioned district courts for adjusting an attorney's rate downward. *See Mathur v. Board of Trustees of Southern Illinois University,* 317 F.3d 738, 743 (7th Cir. 2003); *see also Jeffboat, LLC v. Director, Office of Workers' Compensation Programs,* 553 F.3d 487, 490 (7th Cir. 2009) ("[O]ur cases have consistently recognized that an attorney's actual billing rate for comparable work is presumptively appropriate for use as a market rate when making a lodestar calculation."). In the *Norton* case, the Court reduced the attorney's fees by 20% because he was from Chicago and there was a "likelihood - uncertain though it is - that a local [Springfield] civil rights attorney would have taken the case

13

and achieved an equally favorable result for the plaintiffs." *Norton,* 2018 WL 6601083, at 3. Here, Plaintiff hired a local attorney from Peoria, who has over twenty years of experience in employment law, and whose rates are consistent with the market and of other local attorneys with similar stature.

Defendant argues that an award of approximately $18,500.00 for attorney's fees is over three times the Offer, and if the Court were to award such a fee, then many other defendants would be reluctant to make a settlement offer on terms that would leave it exposed to liability for attorney's fees.

"[W]hile a fee request that dwarfs the damages award might raise a red flag, measuring fees against damages will not explain whether the fees are reasonable in any particular case." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009). The Court in *Anderson* stated that

> … it is absolutely permissible to spend $100,000 litigating what is known to be a $10,000 claim if that is a reasonable method of achieving the result. But it might not be a reasonable method. Proportionality then, where useful at all, could alert the court to situations where we might expect that the same result could have been achieved more efficiently. But if, for some reason, the hours expended were reasonable in a particular case, then so is the fee.

*Id.* The Seventh Circuit has held that because litigation can be expensive, it is not surprising that the cost to pursue a contested claim will often exceed the amount in controversy. *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000); *Anderson,* 578 F.3d at 545 ("we have 'rejected the notion that the fees must be calculated proportionally to damages'") (internal citations omitted). Furthermore, fee-shifting allows a plaintiff to bring these types of cases because it makes no difference to an attorney whether they receive $20,000.00 for pursuing a $10,000.00 claim or $20,000.00 for pursuing a $100,000.00 claim. *Id; Barrow v. Falck,* 977 F.2d 1100, 1103 (7th Cir. 1992). By capping attorney's fees to be proportionate to damages,

14

or an offer, attorneys may become less likely to assist with meritorious claims if they will not be reasonably compensated. Accordingly, the Court does not find Defendant's argument persuasive, especially given that the Court has reduced the amount of fees requested.

All of the evidence in the record suggests that $425/hour is the prevailing market rate. Therefore, the Court concludes that a reasonable rate for Ms. Herman is $425/hour.

### III. Lodestar Amount

The lodestar amount is determined by "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. As determined above, the number of hours Ms. Herman reasonably expended in this litigation constitutes a total of 34.6 hours. This is representative of the 20.9 hours from Plaintiff's deposition to the Offer and subsequent work, and 13.7 hours of pursuing attorney's fees. The Court determined that Ms. Herman was already compensated for the 5.5 hours of legal assistance provided before Plaintiff's deposition, and therefore this amount will not be calculated in the lodestar. Furthermore, the Court has found that Ms. Herman's rate of $425/hour is a reasonable rate. Therefore, the lodestar amount is $14,705.00.

### IV. Adjustments to the Lodestar

After calculating the lodestar amount, the court must determine whether that amount should be adjusted upward or downward. *Hensley*, 461 U.S. at 430. "When a plaintiff has obtained an excellent result, [his] attorney should recover a fully compensable fee (i.e., the modified lodestar amount), and the fee should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.'" *Spegon*, 175 F.3d at 557 (quoting *Hensley*, 461 U.S. at 435). When a plaintiff, however, only achieves a partial or limited success, the court has the discretion to reduce the lodestar amount to reflect an accurate degree of the plaintiff's success. *Id*. at 557–58.

15

The degree of a plaintiff's success can be measured by the number of claims won and lost, but it can also be judged in light of the damages obtained compared to the resources expended to obtain them. *Montanez*, 755 F.3d at 556-57. "The trial judge is in a better position to assess whether the unsuccessful claims were important or trivial; whether a ... judgment is a spectacular success, a dismal failure, or something in between; and whether the plaintiff's lawyers would have spent substantially less time on the case had they been more realistic." *Id.* at 557.

Here, Plaintiff received and accepted an Offer for $5001.00. Plaintiff's actual lost wages were approximately $6217.00. Thus, the Offer was nearly 80% of his economic damages. As a result, the Court finds that Plaintiff has obtained an excellent result and determines that the lodestar is $14,705.00. This figure is presumptively reasonable, and the Court does not find any basis for either an upward or downward adjustment.

**V.     Costs**

The presumption is in favor of the prevailing party recovering the cost; the losing party bears the burden of affirmatively demonstrating that a cost is inappropriate. *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F. 3d 854, 864 (7th Cir. 2005). Courts are required to determine: "(1) whether the cost imposed on the losing party is [statutorily] recoverable and (2) if so, whether the amount assessed for that item was reasonable[]" before awarding costs. *Majeske v. City of Chicago*, 218 F. 3d 816, 824 (7th Cir. 2000). "[D]istrict courts enjoy wide discretion in determining and awarding reasonable costs." *Id.* (citing *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F. 2d 633, 642 (7th Cir. 1991)).

Here, Ms. Herman has requested $535.00 for the deposition transcript and submitted a bill of costs and form AO-133 in accordance with Local Rule 54.1. Defendant has not challenged the transcript cost.

The Seventh Circuit has held that the Judicial Conference's rate applies to deposition costs. *Cengr v. Fusibond Piping Sys., Inc*., 135 F. 3d 445, 453-54 (7th Cir. 1998) (finding "deposition costs (including transcripts) are authorized under § 1920(2) as stenographic transcripts."). The relevant current rates prescribed by the Judicial Conference, and adopted by the Central District of Illinois, includes a maximum allowable recovery of $3.65 per page for original transcripts ordered within 30 days. UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS, GENERAL ORDER NO. 18-02 (2018), https://www.ilcd.uscourts.gov/sites/ilcd/files/general-ordes/General%20Order%2018-02.pdf.

The Parties have not submitted the full transcript of Plaintiff's deposition; however, Exhibit 37-8 includes page 207 of the deposition transcript. Since the amount requested is $535.00, the Court can assume that the rate per page is less than $3.65, otherwise the amount would be above $755.55.[2] Therefore, the Court finds the cost of $535.00 recoverable and reasonable.

## CONCLUSION

For the foregoing reasons, Plaintiff's Petition for Attorney Fees and Costs [37] is GRANTED in part and DENIED in part. Plaintiff is entitled to $14,705.00 in fees and $535.00 in costs.

ENTERED this 11th day of October, 2019.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

---

[2] 207 x $3.65 = $755.55